# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **CITY OF OREM and JAMES LAURET,** <br><br> **Plaintiffs,** <br><br> v. <br><br> **EVANSTON INSURANCE COMPANY,** <br><br> **Defendant.** | **MEMORANDUM DECISION AND ORDER** <br><br> **Case No. 2:16-cv-425-JNP-PMW** <br><br> **District Judge Jill N. Parrish** <br><br> **Chief Magistrate Judge Paul M. Warner** |

District Judge Jill N. Parrish referred this case to Chief Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Before the court is Plaintiffs' Motion for Sanctions Against Defendant for Failing to Comply with Court's Order.[2] In addition, Defendant has filed Defendant's Objection to the Declaration of Gary T. Fye (the "Objection")[3] in response to Plaintiffs' Amended Reply to Defendant's Opposition to Plaintiffs' Motion for Sanctions (the "Reply").[4] Having reviewed the parties' briefs and the relevant law, the court renders the following Memorandum Decision and Order.[5]

## BACKGROUND

In 2014, during the Summerfest Parade sponsored by the City of Orem (the "City"),

---

[1] *See* docket no. 6.
[2] *See* docket no. 66.
[3] *See* docket no. 82.
[4] *See* docket no. 78.
[5] Pursuant to civil rule DUCivR 7-1(f) and DUCivR 37-1, the court elects to determine the present motion on the basis of the written memorandum and finds that oral argument would not be helpful or necessary.

Nylie and Liam Tanaka (the "Tanakas") were injured by an explosion.[6] Subsequently, the Tanakas filed a personal injury lawsuit in state court against the City and the chairman of the Summerfest Parade, James Lauret.[7]

During the incident, the City was covered by a general commercial liability policy issued by Defendant Evanston Insurance Company ("Defendant").[8] Pursuant to the Evanston policy, Plaintiffs tendered the defense of the Tanakas' lawsuit to Evanston.[9] After investigating the incident and seeking independent legal advice, Defendant determined that the Tanakas' lawsuit fell outside the policy's coverage and, therefore, Defendant had no duty to defend and indemnify the City.[10] In response, Plaintiffs defended the Tanakas' lawsuit and eventually reached a settlement.[11]

During the pendency of the Tanakas' lawsuit, Plaintiffs filed the above-captioned lawsuit in state court seeking a declaratory judgment that Defendant had a contractual duty to defend Plaintiffs and that the Tanakas' claims are covered by the Defendant's policy.[12] Plaintiffs also ask for relief under theories of breach of contract and breach of the implied covenant of good faith and fair dealing.[13] Furthermore, Plaintiffs claim they are entitled to "the amount of any costs or expenses defending the [Tanakas' lawsuit], any amount paid in settlement . . . , and any other

---

[6] *See* docket no. 2-3 at ¶¶ 6–7.
[7] *See* docket no. 2.
[8] *See* docket no. 19. The policy was originally issued by Essex Insurance Company. However, since the initiation of this lawsuit, Essex Insurance Company merged with Defendant. *See id.* at iii.
[9] *See* docket no. 2-3 at ¶ 11.
[10] *See* docket no. 19 at iv.
[11] *Id.* at v.
[12] *See* docket no. 2-3.
[13] *Id.* Since filing the Motion, the Plaintiffs' third cause of action for breach of the implied covenant of good faith and fair dealing was dismissed without prejudice. *See* docket no. 90, Order Granting Defendant's Motion to Dismiss Third Cause of Action.

amounts this court deems just."[14] On May 20, 2016, Evanston removed this action to federal court.[15]

On June 20, 2017, Plaintiffs filed a short form motion to compel Defendant to produce the claims guidelines, policies, procedures and manual relating to the handling of claims such as the Tanakas' claims against the City (the "Motion to Compel").[16] Plaintiffs also sought to compel Defendant to produce its underwriting guidelines and policies.[17] This motion was referred to the undersigned.[18]

On July 3, 2017, this court issued an order granting in part the Motion to Compel (the "Order").[19] In it, Defendant was ordered "to produce any claims manual that would have assisted Evanston's claims adjusters in evaluating the City's claim for coverage."[20] The court instructed that the "order should be construed broadly" and that "[a] claims manual may include *any* company policy or procedure that would have assisted a claims adjuster in addressing the City's claim."[21] In addition, the Defendant was "ordered to produce any underwriting policies, procedures, and guidelines utilized by Evanston in underwriting the City's policy."[22]

In response to the Order, Defendant has produced no documents whatsoever to Plaintiffs.[23] Plaintiffs argue that this constitutes a failure to comply with the Order, and seek

---

[14] Docket no. 2-3 at 4–5.
[15] *See* docket no. 2.
[16] *See* docket no 36.
[17] *See id.*
[18] *See* docket no. 6.
[19] *See* docket no. 48.
[20] *Id*. at 4.
[21] *Id*. (emphasis added).
[22] *Id*. at 5.
[23] *See* docket no. 66 at 2.

3

sanctions pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure.[24] Defendant argues that, despite failing to produce any documents, it has fully complied with the Order because (1) a claims manual did not exist at the time the claim at issue was handled, and (2) "any underwriting guidelines in place were not *utilized* in the underwriting of the policy at issue."[25] Defendant has also filed an objection to the declaration of Plaintiffs' expert Gary T. Fye (the "Fye Declaration"), submitted in support of the Reply, and to the additional sanctions requested in the Reply.

## **DISCUSSION**

Rule 37(b)(2) provides that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). For the reasons that follow, the court finds Defendant's arguments that it has complied with the Order disingenuous and unpersuasive. Accordingly, the court finds that the Defendant has not obeyed the Order and sanctions are appropriate.

I. CLAIMS MANUAL OR OTHER DOCUMENTS THAT ASSISTED THE CLAIMS ADJUSTER IN EVALUATING THE CITY'S CLAIM

The court instructed that the Order "should be construed broadly."[26] Instead, Defendant has construed the Order narrowly to suit its own purposes. Defendant insists again, just as it did in its opposition to the Motion to Compel, that no claims manuals existed when the City's claim was submitted.[27] Therefore, Defendant argues that the Order did not compel it to produce anything. However, the Order did not limit the documents Defendant was ordered to produce to documents entitled, "claims manual." Indeed, the court was well aware of Defendant's position

---

[24] *See* docket no. 66.
[25] Docket no. 69 at 2 (emphasis added).
[26] Docket no. 48 at 4.
[27] *See* docket no. 69 at 27.

4

that no claims manual existed when the Order was issued.[28] Knowing this, Defendant was ordered to produce *any* policy or procedure that would have assisted the claims adjuster in making her decision.

The court notes that Defendant now makes an additional and slightly different argument, that "during the administration of the policy, Markel Services, Incorporated [("Markel")], claims manager for Essex and Evanston, did not *utilize* claims manuals."[29] This is not necessarily inconsistent with Defendant's positon that no claims manuals existed during the relevant time period. However, it strains credulity that a claims adjuster would make a coverage decision without consulting *any* policy, procedure, guidance, or other similar document. The court is skeptical that Defendant was happy to have its claims adjusters rely on their instinct alone to make claims decisions.[30] This is particularly true where Defendant admits that claims manuals existed prior to and subsequent to the year in which the City's claim was submitted.[31] As was made plain in the Order, Plaintiffs are entitled to discover, and Defendant must produce, any and all documents, policies, procedures, or other guidance which was employed, referenced, or otherwise consulted by the claims adjuster in evaluating the City's claim, however designated. The court finds that the Defendant's failure to produce anything at all violates both the letter and the spirit of the Order. Therefore, Defendant shall produce to Plaintiffs whatever document, policy, procedure, or guideline that was relied upon by the claims adjuster in making the decision

---

[28] *See* docket no. 48 at 3; *id*. at fn. 17.
[29] Docket no. 69 at 23 (emphasis added).
[30] In the Objection, Defendant objects to the Fye Declaration, submitted with the Reply in support of Plaintiffs' argument that it is unlikely that no claims manual existed. However, this court is fully capable of concluding, without the assistance of the Fye Declaration, that the adjuster relied on *something* in evaluating the City's claim. Consequently, Defendant's request that the Fye Declaration be stricken is moot.
[31] *See* docket no. 69 at 26.

regarding the City's claim, in compliance with the Order. If the Defendant continues to insist that no such documents, policies, procedures, or guidelines exist, then the Defendant shall produce to Plaintiffs a declaration or affidavit confirming the same, and explaining in detail exactly how the decision regarding the City's claim was made.

II. UNDERWRITING GUIDELINES AND OTHER DOCUMENTS RELIED UPON BY THE UNDERWRITER IN ISSUING THE CITY'S POLICY

As to the underwriting guidelines, the Defendant has taken a similar approach. Defendant does not refuse to produce the underwriting guidelines because they don't exist. Indeed, Defendant admits they do exist. Rather, Defendant refuses to produce the underwriting guidelines because, Defendant argues, they were not "utilized" in the issuance of the City's policy.[32] Defendant argues that "the policy at issue fell outside of Markel's guidelines" so the guidelines were not "utilized" to issue the City's policy.[33] Instead, asserts Defendant, "Markel's underwriters have the discretion to quote business that falls within their authority."[34] Defendant's hyper-technical definition of the term "utilized" is unavailing. The underwriting guidelines are within the scope of the Order, and Defendant has failed to comply with the Order by refusing to produce them.

Moreover, Defendant explains that a letter of authority provided to Markel's underwriter by Defendant (the "Letter of Authority") "sets forth the maximum premium and maximum coverage for an underwriter."[35] Nevertheless, Defendant seems baffled that Plaintiffs would

---

[32] *See* docket no. 69 at 28–29.
[33] *Id*. at 31.
[34] *Id*.
[35] *Id.*

6

believe that the Letter of Authority is within the scope of the Order.[36] According to Defendant, because the Letter of Authority is not an underwriting guideline, it is not within the scope of the Order. The court does not share Defendant's bewilderment. Defendant was "ordered to produce *any* underwriting policies, procedures, and guidelines utilized by Evanston in underwriting the City's policy," [37] not merely documents titled, "underwriting guidelines." By Defendant's own description, the Letter of Authority defines the limits of the discretion given to Markel's underwriters to quote business outside of the guidelines.

Accordingly, the court finds that both the Letter of Authority and the underwriting guidelines are within the scope of the Order. The Defendant's failure to produce those documents, *and any others* relied upon by the underwriter in issuing the City's policy, violates the Order.

## **CONCLUSION**

In short, the court rejects the Defendant's tortured interpretation of the Order, the practical effect of which is that Defendant was compelled to disclose nothing at all. The court will not tolerate gamesmanship with respect to discovery, which wastes both the parties' and the court's time and resources.

Based on the foregoing, the court finds that Defendant has not complied with the Order, and sanctions for failure to do so are warranted. Accordingly, Plaintiffs' motion for sanctions is

---

[36] *See id.*
[37] Docket no. 48 at 5 (emphasis added).

hereby **GRANTED IN PART AND DENIED IN PART**. The Court imposes the following sanctions for Defendant's violation of the Order: [38]

1. Defendant shall comply with the Order by producing to Plaintiffs any and all documents, policies, procedures, or other guidance, however designated, that would have assisted, did assist, or were consulted, referenced, or relied upon by the claims adjuster in making the decision regarding the City's claim. If the Defendant continues to insist that no such documents, policies, procedures, or guidelines exist, then the Defendant shall produce to Plaintiffs a declaration or affidavit from a knowledgeable officer of Markel's claims department confirming the same, and explaining in detail exactly how the decision regarding the City's claim was made.

2. Defendant shall produce to Plaintiffs Markel's underwriting guidelines in place at the time the City's policy was issued, the Letter of Authority, and any other underwriting guidelines, manuals, policies, procedures, or other documents relied upon by the underwriter in issuing the City's policy.

3. Plaintiffs shall be allowed to take a Rule 30(b)(6) deposition of a managerial employee of Defendant most knowledgeable regarding the claims manuals, construed broadly to include company policies and procedures regarding claims. Defendant shall pay for the reasonable attorney fees and expenses associated with the taking of this deposition.

4. Plaintiffs shall be awarded reasonable expenses, including attorney fees, related to Defendant's refusal to produce the documents as ordered by the Order. *See* Fed. R. Civ. P.

---

[38] In the Objection, Defendant also objects to additional relief requested in the Reply. The court has not granted any of the additional relief requested in the Reply, and, therefore, the objection to the additional relief requested is moot.

37(b)(2)(C). Plaintiffs are directed, within fourteen (14) days of the date of this order, to file an affidavit and cost memorandum detailing the reasonable expenses, including attorney fees, incurred in connection with filing the instant motion for sanctions. Defendant will then have fourteen (14) days to respond to Plaintiffs' affidavit and cost memorandum. After receiving the parties' briefs, the court will make a final determination concerning the amount of sanctions imposed upon Defendant.

      IT IS SO ORDERED.

      DATED this 7th day of November, 2017.

                              BY THE COURT:

                              PAUL M. WARNER
                              Chief United States Magistrate Judge