IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CITY OF OREM and JAMES LAURET, *Plaintiffs*, v. EVANSTON INSURANCE COMPANY, *Defendant*. | **MEMORANDUM DECISION AND ORDER SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S PARTIAL OBJECTION** Case No. 2:16-cv-425-JNP District Judge Jill N. Parrish |

## I. BACKGROUND

This is an insurance case. In 2014, the City of Orem sponsored a Summerfest Parade (the "Parade"). During the Parade, an explosion injured two children, Nylie and Liam Tanaka. They sued the City and the chairman of the Parade (collectively, "Plaintiffs"). The City had purchased a general commercial liability insurance policy (the "Policy") for the Parade. The Policy was issued by Essex Insurance Company, which later merged and was succeeded by Evanston Insurance Company (collectively, "Evanston"). The Plaintiffs tendered the Tanaka lawsuit to Evanston. But after investigating the incident and seeking independent legal advice, Evanston determined that it did not have a duty to defend or indemnify Plaintiffs. As such, Plaintiffs paid for their own defense and eventually settled the lawsuit.

During the pendency of the Tanaka lawsuit, Plaintiffs filed the above-captioned case in state court. They seek a declaration (1) that the Policy provides coverage and (2) that Evanston had a contractual duty to defend them. They also allege breach of contract and breach of the implied covenant of good faith and fair dealing. Further, they claim they are entitled to "the

amount of any costs or expenses defending the [lawsuit], any amount paid in settlement . . . , and any other amounts this court deems just." Evanston removed the case to federal court on May 20, 2016.

On June 20, 2017, Plaintiffs filed a short-form motion to compel. *First*, Plaintiffs sought to compel Evanston to produce the claims guidelines, policies, procedures, and manuals relating to the handling of claims such as the Tanaka's claims against the City. *Second*, Plaintiffs sought to compel Evanston to produce its underwriting guidelines and policies. This matter was referred to Magistrate Judge Paul M. Warner.

On July 3, 2017, Judge Warner issued a Memorandum Decision and Order (the "Production Order"). It compelled Evanston to produce the following two categories of documents: (1) claims manual or similar documents applicable to the subject claim; and (2) underwriting materials that were utilized to underwrite the Policy. Specifically, the Production Order provides:

> (1) If a claims manual existed during the creation and administration of the City's policy, it is relevant to Plaintiffs' claims and discoverable. Accordingly, the court orders Evanston to produce any claims manual that would have assisted Evanston's claims adjusters in evaluating the City's claim for coverage. This order should be construed broadly. A claims manual may include any company policy or procedure that would have assisted a claims adjuster in addressing the City's claim.
>
> (2) With respect to Evanston's underwriting materials, the court agrees with Evanston that Plaintiffs are only entitled to the underwriting information utilized to underwrite the City's policy. As it is written, Plaintiffs' request is overly broad and is not proportional to the needs of the case. Therefore, Evanston is ordered to produce any underwriting policies, procedures, and guidelines utilized by Evanston in underwriting the City's policy.

The court will refer to the first category as the "Claims Manual Category" and the second as the "Underwriting Material Category."

Evanston did not produce documents falling into either category. Consequently, Plaintiffs contended that Evanston violated the Production Order and that the court should impose sanctions on Evanston pursuant to Federal Rule of Civil Procedure 37(b)(2). Evanston argued that, despite failing to produce any documents, it had fully complied with the Production Order because (1) a claims manual did not exist at the time the claim at issue was evaluated and (2) "any underwriting guidelines in place were not utilized in the underwriting of the policy at issue." Plaintiffs' request for sanctions was also referred to Judge Warner.

On November 7, 2017, Judge Warner issued a Memorandum Decision and Order (the "Sanctions Order"). *First*, Judge Warner held that Evanston's failure to produce anything related to the Claims Manual Policy category "violate[d] both the letter and the spirit of the [Production] Order." Consequently, Judge Warner ordered Evanston to produce "whatever document, policy, procedure, or guideline that was relied upon by the claims adjuster in making the decision regarding the City's claim, in compliance with the [Production] Order." But Judge Warner also gave Evanston the opportunity if it "continue[d] to insist that no such documents, policies, procedures, or guidelines exist," to "produce to Plaintiffs a declaration or affidavit confirming the same, and explaining in detail exactly how the decision regarding the City's claim was made."

Despite giving Evanston the opportunity to verify its position (*i.e.*, that no claims manuals or similar documents existed), Judge Warner imposed sanctions on Evanston. Specifically, Judge Warner ordered that Plaintiffs be allowed to take a Rule 30(b)(6) deposition of a managerial employee of Evanston most knowledgeable regarding the claims manual, construed to include company policies and procedures regarding claims. Moreover, Judge

Warner ordered that Evanston pay Plaintiffs the reasonable attorneys' fees and expenses associated with the deposition.

*Second*, as to the Underwriting Material Category, Judge Warner held that Evanston violated the Production Order when it failed to produce a Letter of Authority, which "sets forth the maximum premium and maximum coverage for an underwriter." According to Judge Warner, the Letter of Authority defined the limits of discretion given to the underwriters to quote businesses and thus it was utilized by Evanston in underwriting the City's policy. Judge Warner also held that Evanston violated the Production Order when it failed to produce certain underwriting guidelines. Consequently, Judge Warner ordered Evanston to produce the Letter of Authority and the underwriting guidelines. Judge Warner, based on his determination that Evanston violated the Production Order, awarded Plaintiffs reasonable attorneys' fees related to Evanston's refusal to produce documents related to the Production Order.

In response to the Sanctions Order, Evanston produced an affidavit from David Ashley, a Senior Claims Director for Markel Services, Inc.[1] Markel is the claims service manager for Evanston. In the affidavit, Mr. Ashley states that "[i]n 2014 and 2015, [Markel] did not have (in either electronic form or hard-copy) a written claims manual, policies, procedures, guidelines, or other document that [the claims adjuster] could have consulted for the Tanaka Loss that would be used to evaluate coverage. [Markel] did not issue a claims procedure manual *of any type* until October 2016." (emphasis added).[2]

---

[1] The court includes this paragraph for additional background only. Evanston asks the court to take Mr. Ashley's affidavit into account when ruling on its objection. But Judge Warner did not consider the affidavit when he imposed sanctions. Indeed, Evanston produced the affidavit after Judge Warner issued the Sanctions Order. Because Judge Warner did not consider the affidavit, it would be improper for this court to consider it when reviewing Judge Warner's Sanctions Order.

[2] This is consistent with other representations made by employees of Markel. For instance, the claims adjuster who worked on the claim at issue testified that there was no claims manual in

## II. DISCUSSION

Evanston has objected to the Sanctions Order. *First*, Evanston contends that Judge Warner erred when he ordered Evanston to provide and pay for a Rule 30(b)(6) deposition. *Second*, Evanston contends that it was not required to produce the Letter of Authority or other underwriting guidelines because they were not reviewed, consulted, or utilized in the underwriting of the Policy. In short, Evanston claims that it was wrongfully sanctioned for failing to produce documents that (1) never existed or (2) were not consulted, referred to, or otherwise utilized in connection with the subject claim and the Policy.

### A. MOTION STANDARD

Rule 37(b)(2) provides that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." When a party objects to a magistrate judge's ruling, it must demonstrate that the order was "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). The clearly erroneous standard requires that the reviewing court be left with a "definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

### B. THE CLAIMS MANUAL CATEGORY

Judge Warner held that Evanston's failure to produce "anything at all [related to the Claims Manual Category] violate[d] both the letter and the spirit of the [Production] Order." But Evanston has consistently maintained that it did not have a claims manual or similar document when it issued the Policy and when it evaluated the claim. *See supra* note 2. Judge Warner was

---

2014. Goodman Dep. 18:4-16. Evanston's counsel also confirmed in an email to Plaintiffs' counsel that "there were no claims manuals during the creation of the City's policy or at the time the decisions were made regarding coverage decisions."

"skeptical" that "a claims adjuster would make a coverage decision without consulting *any* policy, procedure, guidance, or other similar document." But he did not determine that Evanston was being untruthful when it claimed it did not have a claims manual or similar document. Instead, he gave Evanston the opportunity to (1) produce a claims manual or similar document or (2) produce a declaration or affidavit confirming that no claims manual or similar document existed.

If Judge Warner had determined that Evanston misrepresented the existence of a claims manual or similar documents, it would have been proper to order Evanston to pay the costs and attorneys' fees associated with a Rule 30(b)(6) deposition. In such a case, Evanston would have violated the Production Order by failing to produce responsive documents. But Judge Warner was merely skeptical of Evanston's position. Indeed, he gave Evanston an opportunity to produce a declaration or affidavit confirming its position. And if Evanston is telling the truth (*i.e.*, it did not have a written claims manual or similar document when the Policy was issued and the claim was adjusted), it could not have violated the Production Order. Accordingly, the court concludes that Judge Warner prematurely ordered Evanston to pay for a Rule 30(b)(6) deposition because he had not found that Evanston misrepresented the existence of a claims manual or similar document, which would have meant that Evanston violated the Production Order.

If Judge Warner determines that Evanston has not been truthful, he is free to impose sanctions on Evanston, including costs and attorneys' fees associated with the forthcoming Rule 30(b)(6) deposition. But it was premature to hold that Evanston violated the Production Order before giving it an opportunity to confirm that it did not violate the Production Order. It was, however, proper to order a Rule 30(b)(6) deposition to determine whether Evanston

misrepresented the existence of a claims manual or similar documents. In sum, it was proper order the Rule 30(b)(6) deposition but premature to order that Evanston pay for it.

For the reasons set forth above, the court concludes that it was premature to order Evanston to pay for a Rule 30(b)(6) deposition concerning Evanston's claims manuals and similar documents. Accordingly, the court strikes the final sentence of paragraph 3 of the Sanctions Order, which provides, "[Evanston] shall pay for the reasonable attorney fees and expenses associated with the taking of th[e] [Rule 30(b)(6)] deposition."[3] If Plaintiffs, after taking the Rule 30(b)(6) deposition, find that Evanston has violated the Production Order, they may then seek costs and attorneys' fees associated with the deposition.

C. THE UNDERWRITING MATERIAL CATEGORY

Judge Warner ordered Evanston to produce "*any* underwriting policies, procedures, and guidelines utilized by Evanston in underwriting the City's policy." (emphasis added). Evanston contends that it was not required to produce a Letter of Authority, which "sets forth the maximum premium and maximum coverage for an underwriter," and certain underwriting materials because they were not reviewed, consulted, or utilized in underwriting the Policy.

But the court is not persuaded by Evanston's argument. As Judge Warner noted, "[b]y [Evanston's] own description, the Letter of Authority defines the limits of discretion given to

---

[3] In their response to Evanston's objection, Plaintiffs for the first time contend that, even if no claims manual existed before 2016, the post-2016 claims manuals are relevant and should be produced. The court agrees that such documents are relevant in that they would tend to establish Evanston's pre-2016 policies and procedures. As such, Evanston should produce them if they are sought by Plaintiffs. The court is also concerned that Evanston may have violated the Federal Rules of Civil Procedure when it instructed a witness not to answer questions about Evanston's claims manuals and guidelines. Rule 30(c)(2) provides that "[a] person may instruct a deponent not to answer *only* when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." (emphasis added). If Evanston instructs its Rule 30(b)(6) witness not to answer questions at the forthcoming deposition without a basis for doing so, it should be brought to Judge Warner's attention so that the court can impose sanctions.

Markel's underwriters to quote business outside of the guidelines." In short, the Letter of Authority was "utilized" by the underwriter because it defined the underwriter's discretion to quote the Policy at issue. The fact that the underwriter did not "review" or "consult" the Letter of Authority before quoting the Policy does not mean that the Letter of Authority was not "utilized." *See use*, BLACK'S LAW DICTIONARY 1776 (10th ed. 2014) ("To put into practice or employ habitually or as a usual way of doing something; to follow as a regular custom.").[4] Similarly, despite the fact that the Policy fell outside the scope of the underwriting guidelines, the guidelines were "utilized" because someone determined that the Policy fell outside of their scope. As such, Evanston violated the Production Order when it failed to turn over the Letter of Authority and certain underwriting guidelines.

For the reasons set forth above, the court concludes that Judge Warner was justified in ordering Evanston to produce Markel's underwriting guidelines in place at the time the City's policy was issued, the Letter of Authority, and any other underwriting, manuals, policies procedures, or other documents relied upon by the underwriter in issuing the City's policy. Accordingly, Evanston is required to comply with paragraph 2 of the Sanctions Order.

**D. ATTORNEYS' FEES**

Evanston has objected to paragraph 4 of the Sanctions Order, which provides that "Plaintiffs shall be awarded reasonable expenses, including attorneys' fees, related to [Evanston's] refusal to produce the documents as ordered by the [Production] Order." But as detailed above, Evanston violated the Production Order when it failed to produce the Letter of

---

[4] Evanston's claim that it need not produce the Letter of Authority because "Mr. Schauss testified about the Letter of Authority in detail" is without merit. A party cannot avoid producing a document that it has been *ordered* to produce by simply claiming that the opposing party already knows the contents of the document.

8

Authority and its underwriting guidelines. Consequently, it was not clearly erroneous to award Plaintiffs reasonable expenses, including attorneys' fees.

### III. CONCLUSION AND ORDER

For the reasons set forth above, Evanston's Partial Objection to Magistrate's Memorandum Decision and Order (ECF No. 102) is SUSTAINED IN PART and OVERRULED IN PART. Accordingly, it is HEREBY ORDERED:

1. Plaintiffs shall be allowed to take a Rule 30(b)(6) deposition of a managerial employee of Evanston most knowledgeable regarding the claims manuals, construed broadly to include company policies and procedures regarding claims;

2. The court strikes the final sentence of paragraph 3 of the Sanctions Order, which provides, "[Evanston] shall pay for the reasonable attorney fees and expenses associated with the taking of this deposition";

3. Evanston is ORDERED to comply with paragraph 2 of the Sanctions Order, which provides that "Defendant shall produce to Plaintiffs Markel's underwriting guidelines in place at the time the City's policy was issued, the Letter of Authority, and any other underwriting guidelines, manuals, policies, procedures, or other documents relied upon by the underwriter in issuing the City's policy"; and

4. Plaintiffs are awarded reasonable expenses, including attorneys' fees, related to Evanston's refusal to produce the documents as ordered by the Production Order.

//
//
//
//

Signed January 24, 2018

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge